[Civ. No. 66286. Second Dist., Div. Four. Jan. 21, 1983.]

NATIONAL AUTOMOBILE AND CASUALTY INSURANCE
COMPANY, Plaintiff and Appellant, v.
CALIFORNIA CASUALTY INSURANCE COMPANY,
Defendant and Respondent.

**338**

■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■

COUNSEL

Morris, Moore & Morris and Robert V. Morris for Plaintiff and Appellant.

Stearns & Nelson, Bruce L. Nelson and Al Schallau for Defendant and Respondent.

OPINION

**WOODS, P. J.**—This appeal addresses the issue of the effect of an offer to renew a policy of automobile insurance, made after the death of the named insured. We have concluded that the trial court properly determined that insurance coverage existed on the date of the subject accident, and therefore affirm the judgment below.

Appellant, National Automobile and Casualty Insurance Company, issued a policy of automobile liability insurance to Melvin Gray. That policy was effective from January 26, 1979 to July 26, 1979. Melvin Gray was the named insured under the policy; however, additional insureds were identified at paragraph 16 of the policy and included "any person having proper temporary custody of an owned automobile, as an insured, . . . " following the death of the named insured.

On May 31, 1979, during the policy period, Melvin Gray died. The fact of his death was unknown to appellant. Following his death, the insured automobile was properly in the possession of Roger Gray, whom appellant admits was an insured under the subject policy.

On July 31, 1979, appellant sent a notice to Melvin Gray, which stated: "Notice of lapsed policy. Policy lapsed on effective date (07-26-79) due to non-payment of premium. If you desire to continue your policy with no lapse in coverage, payment must be received by 08-12-79. You have been insured with us since January 1978, we hope you will continue with us. Thank you."

On August 4, 1979, the insured automobile, operated by Roger Gray, was involved in an automobile accident, causing injuries. On August 20, 1979, appellant sent a notice to Melvin Gray, informing him that the policy had been canceled effective July 26, 1979.

Respondent, California Casualty Insurance Company, insurance carrier for third parties injured in the August 4 accident, paid damages to its insureds under its uninsured motorist policy. In a declaratory relief action brought by appellant, respondent sought reimbursement. Following trial by court, judgment was awarded to respondent, based on the trial court's conclusion that "the NATIONAL AUTOMOBILE insurance policy was in full force and effect on August 4, 1979 at the time of the accident and provided liability coverage for permissive driver and custodian, ROGER GRAY."

In reaching that conclusion, the trial court determined that no effective cancellation of the policy had occurred, since appellant failed to comply with Insurance Code sections 662 and 663. We agree.

I

Insurance Code section 662 disposes of the argument that appellant's notice of cancellation, mailed on August 20, could be "effective (07-26-79)" as it announced. That section provides in part: "No notice of cancellation of a policy . . . shall be effective unless mailed or delivered by the insurer to the named insured at least 20 days prior to the effective date of cancellation; provided, however, that where cancellation is for nonpayment of premium, at least 10 days' notice of cancellation accompanied by the reason therefor shall be given."

Under the terms of that section, a notice of cancellation mailed August 20 would be effective no sooner than August 30, 1979, and would not prevent coverage on the date of the accident, August 4.

II

The main thrust of appellant's argument, however, is that the policy expired on July 26, 1979, and was not renewed. It is appellant's position that since the

offer of renewal was addressed to Melvin Gray, who was dead at the time of the offer, no contract of insurance could have been formed, and no offer of renewal was in fact, therefore, made.

Appellant relies on our decision in *Fujimoto* v. *Western Pioneer Ins. Co.* (1978) 86 Cal.App.3d 305, 313 [150 Cal.Rptr. 88], where we observed: "To effect the renewal of an insurance policy there must be both an offer to renew and an acceptance of the offer." That statement was correct in the context in which it was made; however, it does not apply to the instant case. In *Fujimoto,* we addressed the issue of whether a renewal contract had been expressly entered into between an insurer and an insured, where the terms of the offer of renewal had not been strictly complied with. ■■ Here, we consider whether there has been an automatic renewal of the policy by operation of law, by virtue of appellant's failure to comply with the terms of Insurance Code section 663. No "acceptance" is required under the circumstances presented here, where a policy remains in force because the insurer has failed properly to terminate it. Under these circumstances, the death of the named insured and his consequent inability to accept an offer of renewal are immaterial.

Respondent counters that Insurance Code section 663 (which shall be discussed hereinafter) requires that an offer of renewal be made to "an insured" and that the renewal offer was thus made to any of the additional insureds under the subject policy and could have been accepted by any of them. We need not, and do not, address this issue; the failure of appellant to cancel or elect not to renew the subject policy more than 20 days prior to the accident automatically afforded coverage on that date.

Insurance Code section 663 provides, in pertinent part: "An insurer shall offer renewal of a policy, contingent upon payment of premium as stated in the offer, to an insured unless the insurer mails or delivers to the named insured, at the address shown in the policy, at least 20 days advance notice of nonrenewal . . . . The insurer shall not be required to notify the named insured, or any other insured, of nonrenewal of the policy if the insurer has mailed or delivered a notice of expiration or cancellation, on or prior to the 20th day preceding expiration of the policy."

■■ The obvious purpose of the 20-day periods provided in sections 662 and 663 is to give to the named insured, "or any other insured," advance notice of the expiration, termination, cancellation, or nonrenewal of automobile insurance, with enough time for renewal of that coverage or acquisition of other coverage. Public policy certainly favors a system under which motorists will not be operating their vehicles without the benefit of public liability coverage. We therefore readily adopt the conclusion of the court in *State Farm Mut. Auto.*

*Ins. Co.* v. *Brown* (1974) 40 Cal.App.3d 385, 394 [115 Cal.Rptr. 213], in resolving a similar problem: "The plain language of section 663 . . . imports that an insurer's failure to give such notice operates to effect an automatic renewal of the policy, beyond its renewal-expiration date and irrespective of the insured's nonpayment of the renewal premium payable on that date."

■ It is well settled that the rights of a named insured under a policy of insurance inure to all additional insureds under that policy. (*Northwestern Mut. Ins. Co.* v. *Farmers' Ins. Group* (1978) 76 Cal.App.3d 1031, 1041-1042 [143 Cal.Rptr. 415].) As an additional insured, the operator of the vehicle on August 4 was entitled to full coverage after July 26, 1979, until 20 days from the date of a notice of cancellation or nonrenewal. The fact that an additional insured is not a party to the insurance contract does not exempt the insurer from the obligations imposed by the public policy of this state, as embodied in the Insurance Code. (*Cancino* v. *Farmers Ins. Group* (1978) 80 Cal.App.3d 335, 338-339 [145 Cal.Rptr. 508].)

■ Therefore, the requirement of section 663, that an insurer provide an insured with at least 20 days' advance notice of nonrenewal, was binding on appellant, and its failure to do so resulted in automatic renewal of the subject policy. (*Borders* v. *Great Falls Yosemite Ins. Co.* (1977) 72 Cal.App.3d 86, 93 [140 Cal.Rptr. 83].)

The trial court correctly concluded that insurance coverage under the subject policy was in force on August 4, 1979, irrespective of the prior death of Melvin Gray; judgment was properly awarded to respondent and is therefore affirmed.

Kingsley, J., and Nelson (H. P.), J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.