[No. B098803. Second Dist., Div. Six. Nov. 6, 1996.]

MONTE MONTELEONE et al., Plaintiffs and Appellants, v.
ALLSTATE INSURANCE COMPANY, Defendant and Respondent.

512

**COUNSEL**

West & Miyamoto and Ronald K. Miyamoto for Plaintiffs and Appellants.

Pollak, Vida & Fisher, Michael M. Pollak and Gerard A. Lafond, Jr., for Defendant and Respondent.

## OPINION

STONE (S. J.), P. J.—Here we hold that Allstate Insurance Company did not breach its contractual duty to its insured by refusing to defend a third party lawsuit. The accident or loss occurred during the time the policy had lapsed for nonpayment of premium.

Monte Monteleone, Cindi Monteleone, and April Monteleone appeal from a judgment entered upon grant of summary judgment in favor of respondent Allstate Insurance Company. They contend that the trial court erroneously granted summary judgment because Allstate had renewed the policy without lapse, had collected the entire premium without deduction or offset for a lapse, had waived its right to claim lapse and is estopped from so asserting, and that the loss in progress rule is inapplicable to this case. We affirm the judgment.

### FACTS

Appellants were insured under an automobile liability policy issued by respondent in December 1991. The policy was renewed June 21, 1992, for an additional six months. November 16, 1992, thirty-five days before the expiration of the second six-month policy term, Allstate mailed an offer to renew for a third six-month term from December 21, 1992, to June 21, 1993. The offer stated in pertinent part: "Important . . . this is a renewal offer only. Insurance described on this document will not go into effect unless the premium is paid by the due date shown on the payment notice below. . . ." The due date on the payment notice was December 21, 1992. The notice stated a total premium due of $912 but gave the option of installment payments. The notice also stated: "Renewal coverage will not go into effect if we do not receive payment by your due date."

Appellants did not pay the premium by the due date. On December 31, 1992, appellants received a notice from Allstate which stated: "Your insurance coverages have terminated. You are eligible for reinstatement of your policy, with a short lapse in coverage. Please read the enclosed letter for more information." Mrs. Monteleone stated that the letter informed them that they were able to reinstate the policy by paying the first premium installment of $230.50 by January 7, 1993. She called her Allstate agent, Charles Bartlett, on December 31, 1992, and left a message that she wanted her

daughter April added to the policy. On January 3, 1993, April drove the family vehicle and was involved in an accident which became the basis for a personal injury claim and lawsuit by Charles Nelson. On January 4, 1993, Mrs. Monteleone mailed the installment premium payment to Allstate. Allstate received the late premium payment of $230.50 on January 6, 1993, and reinstated the policy effective January 4, 1993, the date the premium was mailed and one day after the accident.

On January 7, 1993, Allstate issued an amended declarations page confirming that April had been added as an insured driver and that, with the additional driver, the premium for the full six-month policy would be $1,211. The amended declarations page and identification cards reflected a policy period of December 21, 1992, through June 21, 1993, without specifying that the policy had lapsed for a portion of the policy period. It stated that the policy was issued January 7, 1993, and showed that the policy period had been amended January 5, 1993.

Appellants received a credit of $69.30 several weeks after issuance of the amended declaration representing a reduction in premium to reflect the period from December 21, 1992, to January 4, 1993, for the period Allstate's records showed the policy was out of force. Allstate denied appellant's claim on January 11, 1993. Appellants settled the personal injury suit with Charles Nelson for $17,500 and brought suit against Allstate for tortious breach of insurance contract. Allstate moved for summary judgment on the basis that it had no duty to defend or indemnify because the policy was not in force on the date of the accident. The trial court granted summary judgment.

## DISCUSSION

### 1. Standard of Review

■ The rules regarding grant of summary judgment and appellate review thereof are well known. Summary judgment is properly granted where the moving party establishes that no issue of fact exists to be tried. (Code Civ. Proc., § 437c; *Rochlis* v. *Walt Disney Co.* (1993) 19 Cal.App.4th 201, 210 [23 Cal.Rptr.2d 793], disapproved on other grounds in *Turner* v. *Anheuser Busch, Inc.* (1994) 7 Cal.4th 1238, 1251 [32 Cal.Rptr.2d 223, 876 P.2d 1022]; *Torres* v. *Reardon* (1992) 3 Cal.App.4th 831, 836 [5 Cal.Rptr.2d 52].) If the trial court determines that no triable issue of fact exists but only one of law, it is the trial court's duty to determine the issue of law. (*Rochlis, supra,* at p. 210; *Torres, supra,* at p. 836.)

■ Appellate review of summary judgment is limited to the facts presented in documents submitted to the trial court. (*Rochlis* v. *Walt Disney Co.,*

*supra*, 19 Cal.App.4th 201, 210; *Torres* v. *Reardon*, *supra*, 3 Cal.App.4th 831, 836.) The appellate court exercises its independent judgment regarding the legal effect of undisputed facts disclosed by the parties' papers, utilizing the same three-step analysis required of the trial court. (*Ibid.*) " '. . . We first identify the issues framed by the pleadings, since it is these allegations to which the motion must respond. Secondly, we determine whether the moving party has established facts which negate the opponents' claim and justify a judgment in the movant's favor. Finally, if the summary judgment motion prima facie justifies a judgment, we determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citation.]' " (*Rochlis*, *supra*, at p. 210, quoting *Torres*, *supra*, at p. 836.)

## 2. *No Triable Issues of Fact*

■ Appellants assert that triable issues of fact exist regarding whether Allstate waived its right to claim lapse by issuing the policy without indicating the lapse and by charging and collecting the entire six-month premium without offset, and whether Allstate is estopped to claim lapse because before the loss, Allstate informed appellants that it would reinstate the policy if payment were made before the "due date" of January 7, 1993. They argue that Allstate's reinstatement offer is vague and ambiguous because the term "lapse" is not defined and the reinstatement offer does not explain what the period of lapse, if any, would cover. We reject all appellants' contentions.

■ The interpretation of an insurance policy is a question of law. (*Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619].) We look to both the language in the policy and any endorsements broadening coverage. (*Ibid.*) A policy provision will be considered ambiguous if it is capable of two or more constructions, both of which are reasonable, considering the language in the contract as a whole. (*Ibid.*) An insurer has a duty to defend if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage. (*Id.*, at p. 19.) However, where there is no possibility for coverage, there is no duty to defend. (*Ibid.*) "[W]here the extrinsic facts eliminate the potential for coverage, the insurer may decline to defend even when the bare allegations in the complaint suggest potential liability." (*Ibid.*)

■ Appellants base their argument that the policy was renewed without lapse in coverage because the amended policy declarations which they received *after* the accident indicated that the policy period was December 21, 1992, to June 21, 1993. They contend that this stated period controls, is unequivocal, and the loss consequently occurred within the effective dates of

coverage. We do not agree with this strained interpretation of the documents presented to the trial court. The renewal offer of November 16, 1992, clearly stated that the insurance described in the document would not go into effect unless the premium was paid by the due date shown, which was December 21, 1992. The reinstatement offer stated that appellants were "eligible for reinstatement of your policy, *with a short lapse in coverage*." (Italics added.) Allstate's policy states that "[i]f the required renewal premium payment isn't received on or before the end of the then current policy period, your policy will terminate automatically on the expiration date of the then current policy period." The policy also explains that "[i]f we offer to renew your policy and your required premium payment isn't received on or before the end of the then current policy period, your policy will terminate automatically on the expiration date of the then current policy period."

As explained in *Fujimoto* v. *Western Pioneer Ins. Co.* (1978) 86 Cal.App.3d 305, 310 [150 Cal.Rptr. 88], Insurance Code section 663 requires an insurer to offer renewal of an automobile liability policy, contingent upon payment of the premium as stated in the offer, unless the insurer has given notice of nonrenewal, expiration or termination. "The plain meaning of the provision of section 663 . . . is that the failure of an insured to pay a premium on or before the date specified in the renewal offer will result in termination of the policy." (*Id.*, at p. 312.) In order to renew an insurance policy, there must be both an offer and an acceptance. (86 Cal.App.3d at p. 313.) The question here, as in *Fujimoto*, is whether appellants accepted Allstate's offer so as to effect a renewal on December 21, 1992, "thereby keeping it in force on and beyond that date with no break in the period of coverage." (*Ibid.*) Renewal was contingent upon payment of the premium as stated in the offer to renew. (*Ibid.*; Ins. Code, § 663, subd. (a)(1).) Appellants did not mail the premium until January 4, 1993. Consequently, no acceptance resulted. The policy lapsed, as stated in the renewal offer and reinstatement offer, from December 21, 1992, until the date Allstate received the late premium and reinstated it as of the date appellants mailed it, i.e., January 4, 1993.

 Appellants assert that Allstate charged and collected the entire six-month premium without deduction or offset for the alleged lapse which evidences their intent to renew for the entire period from December 21, 1992, until June 21, 1993. They contend that Allstate did not credit them for the lapsed period "for several weeks after the issuance of the renewal policy, well after the coverage dispute arose." This argument does not withstand scrutiny. Since Allstate could not know when, if ever, appellants would send a premium payment after the due date passed, we fail to see how Allstate could have adjusted the premium to reflect the lapsed period in a more

timely manner. Even assuming Allstate did not timely return the premium for the lapsed period, appellants could not have been prejudiced since the accident already had occurred before they ever sent in the premium. (See *Vyn* v. *Northwest Casualty Co.* (1956) 47 Cal.2d 89, 92, 93 [301 P.2d 869].)

Moreover, Allstate's conduct did not amount to a waiver. Giving a delinquent member notice of a right to reinstatement of benefits under his contract of insurance, either with or without conditions, does not in any manner waive his earlier default. (*Silva* v. *National American Life Ins. Co.* (1976) 58 Cal.App.3d 609, 617-618 [130 Cal.Rptr. 211].) "Manifestly the company in such a case must continue to levy the assessments, and to give notice thereof is but to impart needed information to the insured, to the end that he may exercise his right of reinstatement." (*Id.*, at p. 617.) The doctrine of waiver does not defeat the automatic lapse of the policy for nonpayment of premiums here.

Appellants assert that Allstate's own practices and policies of which they were apprised after the accident do not support Allstate's contention that the policy automatically lapsed if payment was not made by the due date. They point to the 10-day grace period when payment is not made by the due date of the renewal offer and the claims manager's statement to them that the policy would have been reinstated without lapse if the accident had not occurred. The 10-day grace period does not aid them because 10 days had passed before they sent in the premium. Allstate's discretion to issue the policy with no lapse has no bearing on whether appellants had a right to expect it where Allstate had not misled them into not timely paying the premium by the due date on the notice of renewal.

Appellants assert that there is a triable issue of fact regarding whether Allstate waived its right to declare a lapse because Dennis Odums, the claims manager, testified in his deposition that he "would not have denied coverage for [appellants'] claim had he been aware that the policy had been renewed without lapse." This contention, taken from appellants' supplemental statement of undisputed facts, does not aid them because the policy had not been renewed without lapse (which is undoubtedly why Odums denied coverage). ▬ " ' "[W]aiver is the intentional relinquishment of a known right after knowledge of the facts." [Citations.] The burden . . . is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and "doubtful cases will be decided against a waiver" [citation].' " (*Waller* v. *Truck Ins. Exchange, Inc.*, *supra*, 11 Cal.4th 1, 31.)

▬ Waiver requires the insurer to intentionally relinquish its right to deny coverage. (*Waller* v. *Truck Ins. Exchange, Inc.*, *supra*, 11 Cal.4th 1, 31,

33-34.) Alternatively, a party may be found to have waived a right " '. . . when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.' " (*Id.*, at pp. 33-34.) Appellants fail to raise a triable issue of fact on this issue.

■ Nor can they raise a triable issue of fact on the theory of estoppel. Estoppel requires a showing of detrimental reliance by an injured party. (*Waller* v. *Truck Ins. Exchange, Inc., supra,* 11 Cal.4th 1, 34.) Appellants assert that Allstate is estopped to claim a lapse because it offered to reinstate the policy if payment was made by January 7, 1993. What appellants refuse or neglect to acknowledge is that the offer was expressly made subject to a lapse. The reinstatement offer clearly stated that coverage had terminated and that reinstatement, if effected, would be "with a short lapse in coverage." Appellants' contention that the term "lapse" was not sufficiently explained does not merit lengthy discussion. There is no factual basis to support that a reasonable person would have believed insurance coverage was still in effect without timely payment of the premium as stated in the offer of renewal. It is undisputed that appellants took no action to reinstate their policy until the accident had already occurred. There is no evidence in the record to suggest that their delayed payment was due to any representation by Allstate or its agents that a late payment would be accepted without lapse in coverage. Information received after the accident and after they paid the late premium was irrelevant to whether they had insurance coverage at the time of the accident. Moreover, neither Allstate nor its agents represented that the loss was covered. The claim was denied within days of appellants' reporting it.

Appellants argue that even assuming the policy was not in force when the accident occurred, the loss-in-progress rule would still not bar the issuance of the policy which would provide coverage for the loss of January 3, 1993, since the loss was uncertain and no obligation to pay had been established. In the context of liability insurance, insurance cannot be obtained for a "known liability." (*Montrose Chemical Corp.* v. *Admiral Ins. Co.* (1995) 10 Cal.4th 645, 692 [42 Cal.Rptr.2d 324, 897 P.2d 1].) Where there is uncertainty about the imposition of liability and no legal obligation to pay has yet been established, there is an insurable risk for which coverage may be sought under a third party policy. (*Ibid.*) "Stated differently, the loss-in-progress rule will not defeat coverage for a claimed loss where it had yet to be established, at the time the insurer entered into the contract of insurance with the policyholder, that the insured had a legal obligation to pay damages to a third party in connection with a loss." (*Id.*, at p. 693.)

*Montrose* does not aid appellants here. The question is not whether the loss-in-progress rule would defeat coverage, but whether Allstate was willing to assume responsibility for a known risk of damages incurred during the

period in which the previous coverage had lapsed. Allstate was not willing and lost no time in informing appellants that it would not insure or defend for that loss. As a matter of law, appellants could not have relied upon amended declarations issued after the accident as proof of coverage for liability arising from that accident. The policy was reinstated with a lapse in coverage. There was no waiver or estoppel.

The judgment is affirmed. Costs to respondent Allstate.

Gilbert, J., and Yegan, J., concurred.