**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| PAMELA SIINO, Individually and on behalf of the Class, | No. 23-16176 |
| *Plaintiff-Appellee*, | D.C. No. 4:20-cv-02904-JST |
| v. | |
| FORESTERS LIFE INSURANCE AND ANNUITY COMPANY, a New York Company, | OPINION |
| *Defendant-Appellant*. | |

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Argued and Submitted January 14, 2025
Pasadena, California

Filed April 1, 2025

Before: JOHNNIE B. RAWLINSON and MILAN D.
SMITH, JR., Circuit Judges, and JED S. RAKOFF,[*]
District Judge.

Opinion by Judge Milan D. Smith, Jr.

---

[*] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

# SUMMARY[**]

## California Insurance Law / Declaratory Relief

The panel affirmed in part and reversed in part the district court's summary judgment in favor of Pamela Siino in her action for declaratory relief challenging Foresters Life Insurance and Annuity Company's termination of her policy for nonpayment of premiums.

Siino's claims were premised on the insurer's violation of two statutes, sections 10113.71 and 10113.72 of the California Insurance Code (the Statutes), which set forth a pretermination notice scheme designed to minimize the chance that policy holders would inadvertently default. Siino alleged that the insurer violated the Designee Notice Requirement (requiring insurers to notify policy owners of their right to designate at least one person to receive notice of lapse or termination of policy for nonpayment of premium) and the Pretermination Notice Requirement (requiring insurers to provide notice regarding impending termination for nonpayment at least 30 days before termination). Siino sought a declaration that (1) the insurer failed to comply with the Statutes in terminating her policy, (2) her policy remained valid and enforceable, (3) the insurer could not require her to pay back her overdue premiums. The district court granted the request in part, declaring that the insurer had wrongfully terminated Siino's policy and that her policy would remain valid so long as Siino tendered all unpaid premiums.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel disagreed with the insurer that Siino's request for declaratory relief was duplicative of her breach of contract claim, and concluded that the district court did not abuse its discretion in entertaining the request. Applying *Small v. Allianz Life Insurance Co. of North America*, 122 F.4th 1182 (9th Cir. 2024), the panel held that the district court did not err in granting the first portion of Siino's requested relief—a declaration that the insurer violated the Statutes—because Siino provided all necessary evidence to support the claim. The district court did not err in finding that the insurer violated the Statutes' Pretermination Notice Requirement and Designee Notice Requirement.

However, the panel held that the district court erred in granting the second portion of Siino's requested relief—a declaration that her insurance policy remained valid—because this declaration required evidence of causation that Siino failed to provide. Even if the insurer had sent Siino the requisite notices, they would not have reached her where the record makes clear that Siino moved and failed to successfully update her address on file.

Because all of Siino's other claims were dismissed with prejudice, the panel remanded to the district court solely for the purpose of entering final judgment.

## COUNSEL

Benjamin I. Siminou (argued) and Jonna D. Lothyan, Singleton Schreiber LLP, San Diego, California; Alex Tomasevic, Nicholas & Tomasevic LLP, San Diego, California; Sarah Ball and Jack B. Winters Jr., Winters & Associates, La Mesa, California; for Plaintiff-Appellee.

Jarrett E. Ganer (argued) and Thomas F. A. Hetherington, McDowell Hetherington LLP, Houston, Texas; James M. Chambers, McDowell Hetherington LLP, Arlington, Texas; Jodi K. Swick, McDowell Hetherington LLP, Oakland, California; for Defendant-Appellant.

## OPINION

M. SMITH, Circuit Judge:

In this insurance action arising under Sections 10113.71 and 10113.72 of the California Insurance Code, Defendant-Appellant Foresters Life Insurance and Annuity Company (FLIAC) challenges the district court's entry of summary judgment in favor of Plaintiff-Appellee Pamela Siino. Siino, whose FLIAC policy was terminated for nonpayment of premiums in 2018, sought a judicial declaration that (1) FLIAC failed to comply with the Insurance Code in terminating her policy, (2) her policy remained valid and enforceable, and (3) FLIAC could not require her to pay back her overdue premiums. The district court granted this request in part, declaring that FLIAC had wrongfully terminated Siino's policy and that her policy would remain valid so long as Siino tendered all unpaid premiums. FLIAC argues that this result was erroneous, first, because Siino's requested relief was duplicative of her other claims, and, further, because Siino failed to establish all necessary elements to support her requested declaratory relief.

We disagree with FLIAC that Siino's requested relief was duplicative and conclude that the district court did not abuse its discretion in entertaining the request. Nevertheless, following our recent opinion in *Small v. Allianz Life*

*Insurance Co. of North America*, 122 F.4th 1182 (9th Cir. 2024), we reach a mixed result on the merits of the relief that the district court granted. We conclude that the district court did not err in granting the first portion of Siino's requested relief—a declaration that FLIAC violated the Insurance Code—because Siino provided all necessary evidence to support this claim. But we find that the district court did err in granting the second portion of Siino's requested relief—a declaration that her insurance policy remained valid— because this declaration required evidence of causation that Siino failed to provide. As a result, we affirm in part and reverse in part the declaratory relief that the district court granted. Because all of Siino's other claims were dismissed with prejudice, we remand to the district court solely for the purpose of entering final judgment.

## FACTUAL BACKGROUND

In 2010, Siino and her husband, nonparty Salvatore Siino, each purchased a life insurance policy from FLIAC. Siino's policy was a twenty-year level term policy with $100,000 in face value, meaning that during the first twenty years of the policy, Siino could maintain coverage by paying a fixed annual premium. The policy provided a "[g]race [p]eriod of 31 days . . . for payment of each premium," and stated that, although the "Policy w[ould] continue in force" during the grace period, "coverage . . . w[ould] terminate" if a "[g]race [p]eriod end[ed] without the payment of the required premium." Siino's annual premium payment was due on January 26 of each year.

From 2010 to 2018, FLIAC sent Siino annual physical notices regarding her upcoming premium payments. However, in 2014, Siino moved away from the address that FLIAC had on file, and although she attempted to submit a

change-of-address request, it was deemed invalid because she did not sign it.[1]  As a result, although FLIAC continued to send Siino annual premium due notices, Siino no longer received them, and she ultimately failed to pay her premium due on January 26, 2018.  FLIAC followed up by letter on February 26, 2018, notifying Siino that her policy had "lapsed" and stating that she "still ha[d] the opportunity to reinstate [her] policy by sending in the premium . . . within 30 days," or by March 28, 2018.  But Siino again did not receive the letter, and she failed to submit her overdue premium by the March deadline.

In 2019, Siino's husband realized that Siino may have missed a premium payment and reached out to the couples' FLIAC agent, Austin Batista, to "check into" the status of her policy.  Batista responded that Siino's policy had lapsed in 2018 due to her failure to pay the premium due that year. He explained that Siino "c[ould] submit a reinstatement application," including an updated medical examination, "in order to get [her policy] in force."  But Siino declined to submit a reinstatement application or to proffer the premium payments she had missed.  Instead, some time before March 2020, she purchased a new life insurance policy from another provider.[2]

---

[1] Although Siino's change-of-address request was deemed invalid, her husband submitted a valid change-of-address request with respect to his own policy.  He continued to receive notices regarding his policy going forward, including an advisement regarding his right to designate a third-party addressee on his policy.

[2] In April 2020, Batista followed up again, explaining that "[a]ll [Siino] would need to do" to "reinstate[]" her policy was "send the 3 years worth of missed premiums."  The notice was too late, as Siino had already purchased her new life insurance policy from another provider.

## PROCEDURAL BACKGROUND

In April 2020, Siino filed a putative class action suit against FLIAC in the United States District Court for the Northern District of California.  In the action, Siino brought claims for declaratory relief under state and federal law, breach of contract, and violations of California's Unfair Competition Law (UCL).  Her claims were premised on FLIAC's alleged violation of two statutes, Sections 10113.71 and 10113.72 of the California Insurance Code, that the California Legislature enacted in 2012 (the Statutes).[3]

The Statutes set forth a "single, unified pretermination notice scheme" consisting of "three components" designed to minimize the chance that policy holders would inadvertently default. *McHugh v. Protective Life Ins. Co.*, 12 Cal. 5th 213, 240 (2021).  First, the Statutes require insurers to give policy owners a 60-day grace period to pay a missed premium payment (the Grace Period Requirement).  Cal. Ins. Code § 10113.71(a).  Second, they require insurers to notify policy owners of their right to designate a third party to receive notices regarding overdue premiums or impending terminations of their policy (the Designee Notice

---

[3] Although the issuance of Siino's policy preceded the enactment of the Statutes, the California Supreme Court held in *McHugh v. Protective Life Insurance Company*, 12 Cal. 5th 213, 222 (2021), that the Statutes "apply to all life insurance policies in force as of January 1, 2013," the date on which the Statutes went into effect.  There is thus no dispute that, under *McHugh*, the Statutes apply to Siino's policy, and its regulatory requirements are therefore "deemed to be incorporated into [her] policy." *Id.* at 224; *see Cal-Farm Ins. Cos. v. Fireman's Fund Am. Ins. Cos.*, 25 Cal. App. 3d 1063, 1071 (1972).  As a result, the parties agree that any violations of the Statutes by FLIAC are substantively equivalent to a breach of FLIAC's policy, i.e., its contract, with Siino.

Requirement).  *Id.* § 10113.72(a), (b).  Third, and finally, the Statutes require insurers to provide notices regarding any unpaid premium, within 30 days of the missed payment, and notices regarding impending termination for nonpayment, at least 30 days before termination (the Pretermination Notice Requirement).  *Id.* §§ 10113.71(b), 10113.72(c).  Siino specifically alleged that FLIAC violated the latter two requirements, i.e., the Designee Notice Requirement and the Pretermination Notice Requirement.

In June 2020, FLIAC moved to dismiss for lack of standing; the district court granted the motion only as to Siino's request for injunctive relief under the UCL, which it dismissed without prejudice.  Siino declined to amend her complaint or reincorporate the claim, and the parties proceeded to discovery.  Siino then moved for class certification in April 2021.  The district court denied Siino's motion on the ground that damages could not be calculated on a class-wide basis.  Finally, in December 2022, Siino moved for summary judgment on her claim for federal declaratory relief under the Declaratory Judgment Act (DJA), 28 U.S.C. § 2201, *et seq.*  Through her motion, Siino sought a declaration that (1) FLIAC failed to comply with the Statutes in terminating her policy, (2) her policy remained valid and enforceable, and (3) FLIAC could not require Siino to pay back her missed premiums.

The district court granted Siino's motion in part and denied it in part.  It found that Siino's requested declaratory relief was not duplicative of her other claims and therefore was appropriately before the court.  It further found that Siino was not required to prove all the elements of a breach of contract claim in order to obtain her requested declaratory relief.  Applying that understanding, the district court held that FLIAC failed to comply with the Statutes in terminating

Siino's policy and that Siino's policy remained valid and enforceable.  The district court held, however, that because the declaratory relief Siino sought was akin to specific performance, Siino was required to tender all overdue premiums to FLIAC in order to maintain her policy going forward.  The district court ordered the parties to meet and confer regarding the total amount of overdue premiums that Siino owed and the deadline by which she would tender that amount to FLIAC.

Following the summary judgment ruling, the parties stipulated that Siino would tender $978 to FLIAC, encompassing the six premium payments she had missed from 2018 to 2023, along with six percent interest.  Siino complied with the stipulation by timely submitting this sum to FLIAC.  Thereafter, the parties stipulated to the voluntary dismissal, with prejudice, of Siino's remaining claims for breach of contract, state-law declaratory relief, and violations of the UCL.  With Siino's federal-law declaratory judgment claim resolved by the court's summary judgment ruling, and all other claims dismissed, the parties jointly requested the entry of final judgment.  The district court granted the request and entered judgment in August 2023.

FLIAC timely appeals from that result, raising two primary challenges to the district court's summary judgment ruling.  First, FLIAC contends that the district court abused its discretion by entertaining Siino's requested declaratory relief because it was duplicative of her breach of contract claim.  Second, FLIAC contends that the district court erred by granting this declaratory relief without a proper evidentiary record.  FLIAC specifically contends that, because Siino's requested declaratory relief overlapped with her claim for breach of contract, Siino was required to prove all the elements of breach of contract, including causation,

in order to achieve her requested relief. FLIAC argues that Siino failed to make this showing because the undisputed evidence reflects that FLIAC did not breach its contract with Siino and that, even if it did, its actions were not the legal cause of Siino's injury.

While FLIAC's appeal was pending, we issued our opinion in *Small*. That opinion, which concerned the certification of a class seeking relief under the Statutes, addressed a split among courts in our circuit as to whether questions of causation are relevant to breach of contract claims brought pursuant to the Statutes. *Small*, 122 F.4th at 1192. As *Small* noted, one group of courts in our circuit had adopted a "violation-only" approach under which an insurer's violation of the Statutes was adequate to support a breach of contract claim, irrespective of the plaintiff's ability to show a causal relationship between the violation and any resulting injuries. *Id.* Other courts applied a standard "causation" approach, requiring "that the plaintiff . . . not only allege a violation of the Statutes, but . . . also show that the violation caused them harm." *Id.* at 1193. *Small* adopted the latter theory. *Id.* It held that courts must "apply the usual requirements for a breach of contract claim in cases based on claimed violations of the Statutes." *Id.* at 1195.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review the district court's summary judgment ruling pursuant to 28 U.S.C. § 1291. *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 429–30 (1985). "We review de novo a district court's grant or denial of summary judgment." *Botosan v. Paul McNally Realty*, 216 F.3d 827, 830 (9th Cir. 2000). "Thus, on appellate review, we employ the same standard used by the trial court under Federal Rule of Civil Procedure 56(c)." *Animal Legal*

*Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 988 (9th Cir. 2016). Under that standard, "[s]ummary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013) (quoting *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011)); *see Orloff v. Cleland*, 708 F.2d 372, 375 (9th Cir. 1983).

"[O]ur review of a district court's decision to entertain an action under the Declaratory Judgment Act is deferential, under the abuse of discretion standard." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998); *see Wilton v. Seven Falls Co.*, 515 U.S. 277, 289–90 (1995).

## ANALYSIS

### I.  The District Court Did Not Abuse Its Discretion by Entertaining Siino's Requested Declaratory Relief.

FLIAC first argues that the district court abused its discretion by entertaining Siino's request for declaratory relief under the DJA. As FLIAC notes, the DJA creates a permissive scheme under which a district court "may," but need not, "declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201(a); *see Gov't Emps. Ins.*, 133 F.3d at 1223. Thus, "the district court has discretion to determine whether maintaining jurisdiction over the declaratory action would be appropriate." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1107 (9th Cir. 2011). In evaluating the propriety of a declaratory action, the "district court is to consider a variety of factors, including whether retaining jurisdiction would . . . risk duplicative

litigation . . . [or] serve a useful purpose in clarifying the legal relations at issue." *Id*.

FLIAC argues that Siino's requested declaratory relief was not appropriately before the district court because it was duplicative of the breach of contract claim that Siino asserted in her complaint. FLIAC contends that, due to the close similarities between the two claims, the district court was foreclosed from adjudicating both. Siino responds that, although the district court had the power to set aside her request for declaratory relief, it did not abuse its discretion by declining to do so because the claim was not superfluous. Thus, the relevant question is whether any substantive differences exist between the two claims.

We conclude that the two claims are substantively different. As noted, Siino, through her claim for declaratory relief, sought a legal declaration that: (1) "Foresters did not comply with all of the provisions of [the Statutes] before it terminated Mrs. Siino's Policy on February 26, 2018"; (2) "Mrs. Siino's Policy remains valid and enforceable"; and (3) "Foresters may not require Mrs. Siino to pay 'back premiums' accruing since January 2018 in order to revive the Policy." By contrast, through her claim for breach of contract, Siino sought damages based on her contention that FLIAC "breached and continue to breach the express terms of their life insurance policies, including Plaintiff's Policy, as well as the statutory mandates regarding such policies."

These claims are not coextensive because they answer different questions and turn on different considerations. For example, whereas Siino's declaratory relief claim concerns her entitlement to a legal declaration of her rights and obligations with respect to her FLIAC policy, Siino's breach of contract claim concerns her entitlement to damages based

on FLIAC's contractual violations.  The difference between these two inquiries is material, affecting not only how Siino's injuries are remedied but also what is required to access those remedies.  A claim for breach of contract, for instance, requires evidence of damages, *Bramalea Cal., Inc. v. Reliable Interiors, Inc.*, 119 Cal. App. 4th 468, 473 (2004), while parts of Siino's requested declaratory relief does not. Similarly, while portions of Siino's declaratory relief focus only on FLIAC's actions, Siino's breach of contract claim focuses on the effects and consequences of those actions.  In this way, the simultaneous adjudication of both claims would involve different inquiries and present a low risk of "duplicative litigation." *Allstate Ins. Co.*, 634 F.3d at 1107.

Further, even if Siino's claims are slightly duplicative, the adjudication of both could "serve a useful purpose in clarifying the legal relations at issue." *Id.*; *see, e.g.*, *Steen v. Am. Nat'l Ins. Co.*, 609 F. Supp. 3d. 1066, 1073 (C.D. Cal. 2022).  In particular, although Siino's declaratory relief and breach of contract claims could both result in a determination that her policy was improperly terminated, only Siino's declaratory relief claim carries that idea one step forward by asking whether Siino is obligated to pay back her overdue premiums.  That question speaks to the future obligations of the parties, an issue that would not be addressed by Siino's breach of contract claim.  Therefore, for this reason alone, the adjudication of Siino's declaratory relief claim would not be a waste of judicial resources. *See Gov't Emps. Ins.*, 133 F.3d at 1225–26.

For the foregoing reasons, we conclude that the district court did not abuse its discretion by entertaining Siino's request for declaratory relief.  We proceed to evaluate the merits of the relief that the district court granted.

## II. The District Court Erred in Part by Granting Siino's Requested Declaratory Relief.

After electing to entertain Siino's request for declaratory relief, the district court proceeded to grant it, at least in part, by holding that FLIAC failed to comply with the Statutes in terminating Siino's policy and that, as a result, her policy remained effective.  In reaching this conclusion, the district court noted the overlap between Siino's declaratory and breach of contract claims, and it evaluated evidence pertaining to whether FLIAC had violated the Statutes.  Nevertheless, the district court declined to consider the traditional elements of breach of contract, such as causation and damages, explaining that they did not bear on its decision whether to grant declaratory relief.  *See Miles v. Deutsche Bank Nat'l Tr. Co.*, 236 Cal. App. 4th 394, 402 (2015).  FLIAC contends that this was erroneous and that Siino was required to prove all the elements of breach of contract in order to secure her requested declaratory relief. FLIAC further asserts that, had the district court insisted upon the proper presentation of evidence, Siino's declaratory claim would have fallen short.  We evaluate these issues in turn.

### a.  Relief Under the DJA is Context-Specific.

As noted, we begin by reviewing the legal framework and requirements for declaratory relief.  Although the DJA allows a court to "declare the rights and other legal relations of any interested party," 28 U.S.C. § 2201(a), it "does not create new substantive rights," *Republic of Marsh. Is. v. United States*, 865 F.3d 1187, 1199 n.10 (9th Cir. 2017).  Instead, the DJA is a purely remedial statute that "provides an affirmative remedy only when a cause of action otherwise exists." *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 876 (9th

Cir. 2022) (per curiam); *see also Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (relief under the DJA "presupposes the existence of a judicially remediable right"). Frequently, as in the present action, the cause of action accompanying a request for declaratory judgment is breach of contract, for which the declaratory judgment serves as a remedy. *See, e.g.*, *Allstate*, 634 F.3d at 1108. In such cases, the declaratory judgment may be used to affirm the existence of a breach of contract or to clarify any attending contractual obligations. *See Dizol*, 133 F.3d at 1222 n.2, 1225–26.

Yet the fact that declaratory relief must arise from a "valid legal predicate," such as breach of contract, *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012), does not necessarily mean that declaratory relief requires proving the underlying claim. FLIAC suggests, for example, that because Siino seeks declaratory relief arising from her breach of contract claim, Siino must prove each of the elements of breach of contract to earn her requested declaratory relief. But this contention, which is at the core of FLIAC's appeal, is without support. FLIAC provides no authority or case that is on point. To the contrary, and as Siino points out, the only decisions that have opined on the legal requirements for declaratory relief have described the necessary showing in broad strokes. One such decision held simply that declaratory relief requires no more than "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941));

*see Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1192 (9th Cir. 2000).**[4]**

Nevertheless, "[e]ven the most liberal construction that can be placed upon [the DJA] will not warrant the courts in granting affirmative relief by way of a declaratory judgment in the absence of pleading and proof warranting such relief." *See Mackay v. Whitaker*, 116 Cal. App. 2d 504, 510 (1953) (quoting 1 Anderson, *Declaratory Judgments* § 198 (2d ed. 1951)).  Thus, a plaintiff seeking declaratory relief must adduce an evidentiary record sufficient to support the terms of their requested declaration.  The evidentiary record that is required will depend on "the nature of the relief asked for and granted[,]" as opposed to the precise claim underlying the declaratory judgment remedy.  *Pac. Portland Cement Co. v. Food Mach. & Chem. Corp.*, 178 F.2d 541, 546 (9th Cir. 1949); *see, e.g.*, *Hoeck v. City of Portland*, 57 F.3d 781, 787 (9th Cir.), *as amended* (July 10, 1995).  In other words, what a claimant must prove to earn declaratory relief is context-specific:  It may overlap entirely with the underlying claim, as FLIAC suggests, or it may turn on certain smaller issues or topics to which the desired declaration pertains.

Two recent examples help to illustrate this principle.  In *Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, 3 F.4th 605 (4th Cir. 2021), the plaintiff, seeking to be excused from making required payments pursuant to a contract, requested

---

[4] California courts are in accord that declaratory relief need not hew exactly to the underlying claim. *See Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 647 (2009) ("[California law] does not require a breach of contract in order to obtain declaratory relief, only an 'actual controversy.'" (quoting Cal. Civ. Proc. Code § 1060)); *see, e.g.*, *Fujimoto v. W. Pioneer Ins. Co.*, 86 Cal. App. 3d 305, 313 (1978) (evaluating declaratory relief arising from breach of contract without considering causation or damages).

a declaration that the defendant had "materially breached the agreement." *Id.* at 609–10, 613–14. In requesting this declaration, the plaintiff "did not seek a sword—it neither alleged a breach of contract claim nor sought declaratory relief on all the elements of such a claim." *Id.* at 613. Instead, it sought a "shield"—a "statement of its rights and responsibilities based on its belief that [the defendant] breached the [a]greement." *Id.* As a result, when reviewing the jury verdict on appeal, the court only evaluated the sufficiency of the evidence regarding breach, and it rejected the defendant's argument that the plaintiff had been required to introduce "evidence on all the elements of an action for breach of contract," including causation and damages. *Id.* The court found that, "[w]hile [the defendant] would have [it] analyze whether the jury properly found all elements met for a breach of contract claim, that is not the question the jury was asked because that is not the claim [the plaintiff] brought." *Id.*

These circumstances contrast with those in *Small*. There, a putative class seeking relief under the Statutes sought "a declaration that their life insurance policies were improperly lapsed by [the defendant] because it failed to strictly comply with the Statutes before it lapsed those policies." *Small*, 122 F.4th at 1190. Like in *Drummond*, the district court awarded the requested declaration without considering evidence of causation or damages. *Id.* at 1201; *see Drummond*, 3 F.4th at 613–14. But we reversed. *Small*, 122 F.4th at 1203. Scrutinizing the terms of the class's requested relief, we reasoned that it effectively sought a "declar[ation] that the[ir] policies 'improperly lapsed,'" and thus remained valid, "*because* [the defendant] failed to comply with the Statutes." *Id.* at 1201. In other words, the requested relief did not stop at the question of breach—whether the

defendant violated the Statutes or not—but, instead, further implicated the practical effects of that breach—whether the violation of the Statutes had resulted in the continued validity of the class's policies. *Id.* Because the declaration, in this way, functionally "adjudicate[d] the breach of contract claim," we concluded that the district court could not grant the declaration in the absence of evidence supporting all elements of breach of contract, including "causation and damages." *Id.*

> ### b. Different Portions of Siino's Requested Declaratory Relief Required Different Evidentiary Showings.

This background informs our analysis of Siino's requested declaratory relief. As noted, there were two main components to that relief. First, Siino sought a declaration that FLIAC failed to comply with the Statutes when terminating her policy. Second, Siino sought a declaration that, as a result of FLIAC's failure to comply with the Statutes, FLIAC's termination of her policy was improper and ineffective; Siino's policy remained valid and enforceable; and Siino was not required to tender any overdue premium payments. As illustrated by *Drummond* and *Small*, these declarations correspond to different issues, and, accordingly, require different forms of evidence.

The first portion of the declaration, regarding FLIAC's failure to comply with the Statutes, is most analogous to *Drummond*. This declaration pertains narrowly to the limited question of breach—whether FLIAC, in terminating Siino's policy, did so in a way that was or was not compliant with the applicable rules set forth in the Statutes. Thus, as in *Drummond*, the requested declaration is not an offensive "sword" that Siino could use to collect damages, but, instead,

only a "shield" that Siino might use "to protect [herself] should [FLIAC] seek payment" of overdue premiums.   3 F.4th at 613.  As a result, before awarding this portion of the declaration, the district court was not required to analyze all the elements of breach of contract.  *Id.*  Instead, because the requested relief purely corresponded to the question of breach, that is the sole element that Siino was required to establish.  *See id.*; *see also, e.g.*, *Fujimoto*, 86 Cal. App. 3d at 313.

The outcome is different with respect to the second portion of Siino's requested declaration, regarding the effects of FLIAC's contractual breach and the continued viability of Siino's policy.  Like the requested declaration in *Small*, this declaration raises the question whether Siino's policy remains valid "*because* [FLIAC] failed to comply with the Statutes."  *Small*, 122 F.4th at 1201.  Therefore, in contrast with *Drummond* and the first portion of Siino's requested declaration, the second portion of the requested declaration is not limited to the question of breach—whether FLIAC failed to comply with the Statutes—but goes further to probe the consequences of that breach—whether FLIAC's failure to comply means that Siino's policy was "improperly lapsed" and remains valid going forward.  *Id.*  As a result, as in *Small*, this requested declaration functionally "adjudicate[s] [Siino's] breach of contract claim" and therefore turns on Siino's ability to prove the elements of breach of contract, including causation and damages.  *Id.*

### c.   The District Court Did Not Err by Granting the First Portion of Siino's Requested Declaratory Relief.

We next evaluate Siino's presentation of evidence, focusing first on the first portion of her requested declaratory

relief—the declaration that FLIAC failed to comply with the Statutes in terminating Siino's policy.  As discussed, we have concluded that this relief pertained only to the question of breach, and the district court found that Siino established that element through evidence that FLIAC violated the Statutes' Pretermination Notice and Designee Notice Requirements.  We discern no error in these findings. Accordingly, we affirm the district court's decision to grant the first portion of Siino's requested relief.

### i.  Pretermination Notice Requirement

We first conclude that the district court did not err by finding that FLIAC violated the Statutes' Pretermination Notice Requirement.  This rule requires that insurers provide insureds with a "notice of pending lapse and termination" at least 30 days prior to terminating a policy for unpaid premiums.  Cal. Ins. Code §§ 10113.71(b)(1), 10113.72(c). Whether FLIAC satisfied this rule turns on the details of the notice it sent to Siino on February 26, 2018, following her failure to pay her premium payment due on January 26, 2018.[5]  The notice stated that "[t]he 31 day grace period on [Siino's] policy ha[d] expired and [the] policy ha[d] now lapsed."  It then stated that Siino "still ha[d] the opportunity to reinstate [her] policy by sending in the premium" before March 28, 2018.  The notice concluded with the statement that "[i]f [Siino] fail[ed] to make a payment within the specified timeframe, [her] policy w[ould] still be considered lapsed."

FLIAC's notice to Siino does not satisfy the Pretermination Notice Requirement because it was not sent

---

[5] It is undisputed that FLIAC sent no other notice to Siino that might satisfy the Pretermination Notice Requirement.

"at least 30 days prior to the effective date of termination." Cal. Ins. Code § 10113.71(b)(1). According to the notice's own description, Siino's policy had already "lapsed" at the time the notice was sent. Thus, whereas an appropriate pretermination notice would have advised Siino about the "pending lapse" of her policy and reminded her to pay her premium before it lapsed, *id.*, FLIAC's notice did exactly the opposite—it advised Siino that her policy had already "lapsed" and offered her a retroactive opportunity to "reinstate" the lapsed policy by submitting her overdue payment. This notice failed to provide Siino with the pretermination warning she was owed under the Statutes. *See id.*

FLIAC responds that, even though its notice stated that Siino's policy had lapsed, its own records show that Siino's policy remained in force at the time of the notice, such that FLIAC would have paid a claim if Siino had submitted one at that time. However, as the district court correctly noted, this consideration is not relevant to whether FLIAC complied with the Pretermination Notice Requirement. As noted, that requirement mandated that FLIAC's pretermination notice advise Siino about the "pending lapse and termination" of her policy. *Id.* Thus, even if Siino's policy had not truly lapsed as of February 26, 2018, the only way for FLIAC to satisfy its statutory obligations was to warn her, within 30 days of termination, that lapse was imminent. Because FLIAC did not do so, we conclude that there is no genuine dispute of fact that FLIAC violated the Pretermination Notice Requirement.

### ii. Designee Notice Requirement

We further conclude that the district court did not err by finding that FLIAC violated the Statutes' Designee Notice

Requirement.  This rule requires that insurers provide policy owners "the right to designate at least one person . . . to receive notice of lapse or termination of a policy for nonpayment of premium."  Cal. Ins. Code § 10113.72(a). The insurer shall, upon the initiation of a new policy, "provide each applicant with a form to make the designation."  *Id.*  Thereafter, the insurer shall "notify the policy owner annually of the right to change the written designation or designate one or more persons."  *Id.* § 10113.72(b).  Since the Statutes took effect on January 1, 2013, FLIAC was obligated to provide these notices to Siino each year from 2013 onward.  *McHugh*, 12 Cal. 5th at 220, 225.

In connection with her motion for summary judgment, Siino affirmatively declared that FLIAC had not satisfied the Designee Notice Requirement.  Specifically, she stated that "at no time in or since 2013 did [FLIAC] advise [her] of [her] right to designate another person to receive important policy notices, like notices of premiums being due, premiums being missed, or impending lapse."  FLIAC did not rebut this declaration.  Instead, it introduced the deposition testimony of David Schimmel, a corporate representative of FLIAC, who stated that he could not "confirm or deny whether" Siino received "any notice in writing that she had a right to designate another individual to receive notices before her policy would be lapsed or terminated."  Schimmel further testified that FLIAC had unsuccessfully "exhausted all options" to "ascertain" whether Siino had received a designation notice.

Because Siino affirmatively declared that FLIAC never sent her notice of the right to designate, and FLIAC failed to bring forward opposing evidence suggesting that it did so, there is no genuine dispute of fact that FLIAC violated the

Designee Notice Requirement.  *See* Fed. R. Civ. P. 56(c)(1), (e); *United States v. Falcon*, 805 F.3d 873, 876 (9th Cir. 2015).  FLIAC nevertheless contends that it was not required to bring forward opposing evidence because Siino, having moved from her address on file with FLIAC, "lack[ed] the personal knowledge necessary to say that FLIAC did not send the designation notice to her address of record." FLIAC suggests that because Siino's declaration was "self-serving" in this way, it was not required to rebut it.

FLIAC's argument is not persuasive because the undisputed evidence at summary judgment reflected that Siino, despite her move, retained access to mail sent to her original address—the one that was on file with FLIAC—until 2015.  FLIAC does not dispute that its obligation to begin sending Siino annual notices of her right to designate commenced in 2013.  Therefore, although there could be reason to doubt Siino's declaration that she did not receive notices from 2015 onward, there is no reason to doubt her declaration that she did not receive notices in 2013 and 2014. With this consideration in mind, we conclude that there is no genuine issue of fact that FLIAC violated the Designee Notice Requirement.

Because we agree with the district court that FLIAC violated two of the requirements set forth in the Statutes, we affirm the district court's decision to grant the first portion of Siino's requested declaratory relief.[6]

---

[6] FLIAC also argues that the district court erred by granting this relief without considering its affirmative defenses, including waiver, ratification, and failure to mitigate.  FLIAC is correct that a district court must "provide [an appellant] an opportunity to present affirmative defenses to liability." *Walgreen Ariz. Drug Co. v. Levitt*, 670 F.2d 860, 863 (9th Cir. 1982).  But as we have explained, the first portion of Siino's

### d. The District Court Erred by Granting the Second Portion of Siino's Requested Declaratory Relief.

Finally, we turn to the second portion of Siino's requested declaratory relief—the declaration that Siino's policy remained valid and enforceable.  As discussed, we conclude that this relief required Siino to prove all the elements of breach of contract, including causation.  *Miles*, 236 Cal. App. 4th at 402.  Although the district court did not address this element, it presents a straightforward inquiry in the context of Siino's claims:  By failing to comply with the Pretermination Notice and Designee Notice Requirements set forth in the Statutes, did FLIAC practically cause the harm of which Siino now complains, i.e., the termination of her FLIAC policy?

Such causation questions can prove challenging in the many cases in which policyholders intentionally allow their policies to lapse or otherwise fail to manage their policies.  "For example, 'although the Statutes require Insurers to give Insureds an opportunity to designate a designee, if the Insured would never have designated a designee anyway, then . . . damages cannot be said to result from the Insurer's failure to provide an opportunity to designate.'"  *Small*, 122 F.4th at 1191–92 (quoting *Steen v. Am. Nat'l Ins. Co.*, No. 20-CV-11226-ODW, 2023 WL 4004192, at *12 (C.D. Cal. June 14, 2023)).  Similarly, although the Statutes require insurers to provide notice before terminating a policy for unpaid premiums, if the insured intentionally declined to pay

---

declaratory relief corresponded only to the question of breach and did not adjudicate Siino's underlying breach of contract claim.  Therefore, the affirmative defenses that FLIAC asserted were not relevant to the district court's decision to grant this relief.

their premiums, the eventual termination of the policy cannot be fairly characterized as the fault of the insurer. *See id.*

As previously noted, the difficulty of these cases prompted a doctrinal split among courts in our circuit, under which some courts began to ignore questions of causation entirely. *Id.* at 1192. This split was unresolved at the time the district court issued its summary judgment ruling in this case. However, this split was resolved by *Small*, which concluded "that a breach of contract claim in this context should operate [no] differently than it usually would: by requiring a breach that caused the plaintiff's injury." *Id.* at 1193–94. Under this rule, a plaintiff pursuing a breach of contract claim under the Statutes must show not only that the defendant failed to comply with the Statutes, but, further, that this lack of compliance is the but-for and proximate cause of the plaintiff's injury. *Id.* Making this showing requires the plaintiff to "demonstrate that they did not knowingly or intentionally let the[ir] policy lapse such that the Insurer's compliance with the Statutes would have caused the plaintiff to pay their premiums and retain the policy." *Id.* at 1193. Stated differently, the plaintiff must prove that they did not engage in any conduct that could have severed the causal relationship between the defendant's actions and the plaintiff's injury. *Id.*

That standard is not satisfied here. As noted, Siino's claimed injury is the improper termination of her policy, and she claims that this injury is the result of FLIAC failing to provide her with pretermination notice and notice of her designation rights, as the Statutes require. But even if FLIAC had sent Siino these notices, they would not have reached her: Because the record makes clear that Siino moved in 2014 and failed to successfully update her address

on file, there is no dispute that any additional notices sent by FLIAC would have been directed to an old address where Siino would not have received them.    Against this background, the ultimate termination of Siino's policy "cannot be said to result from [FLIAC]'s failure to provide" its statutorily required notices.  *Small*, 122 F.4th at 1192 (quoting *Steen*, 2023 WL 4004192, at \*12).  Instead, the only action with a causal effect on the termination of the policy is Siino's own: her unresolved failure to pay her annual premium in 2018.

For the foregoing reasons, we conclude, based on the undisputed evidence presented before the district court, that FLIAC's violations of the Statutes were not the legal cause of Siino's injury.   Thus, we reverse the district court's decision to grant the second portion of Siino's requested declaratory relief.[7]

## CONCLUSION

We conclude that the district court did not abuse its discretion by entertaining Siino's request for declaratory relief.  We further conclude that the district court did not err by granting the first portion of Siino's requested declaratory relief—a declaration that FLIAC failed to comply with the Statutes.  Because this declaration pertained solely to the question of breach, that is the sole element that Siino was

---

[7] Because we find that Siino failed to establish causation, we do not reach FLIAC's additional arguments that Siino failed to establish the elements of damages and specific performance.  *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts . . . are not required to make findings on issues the decision of which is unnecessary to the results they reach."). We also do not reach FLIAC's argument that the district court erred by failing to consider its affirmative defenses to this portion of Siino's relief.

required to establish. We find that Siino established this element through undisputed evidence that FLIAC violated two provisions of the Statutes: (1) the requirement that it provide notice prior to terminating a policy for unpaid premiums and (2) the requirement that it provide notice regarding designation rights. Therefore, we affirm the district court's decision to grant the first portion of Siino's requested declaratory relief.

Nevertheless, we conclude that the district court erred in granting the second portion of Siino's requested declaratory relief—a declaration that her policy remained valid despite FLIAC's improper attempts to terminate it. We find that, as in *Small*, this declaration functionally adjudicated Siino's breach of contract claim, and Siino was therefore obligated to establish all elements of breach of contract, including causation, to support the requested declaration. 122 F.4th at 1201. We find that Siino failed to establish those elements because the undisputed evidence reflects that FLIAC's violations of the Statutes were not the legal cause of Siino's injury. Therefore, we reverse the district court's decision to grant the second portion of Siino's requested declaratory relief.

In conclusion, we affirm in part and reverse in part the district court's summary judgment ruling. Because all of Siino's other claims were dismissed with prejudice, we remand to the district court solely for the purpose of entering final judgment.

**REVERSED in part, AFFIRMED in part, and REMANDED.**

Each side shall bear its own costs on appeal.